The STATE of Ohio

v.

NORRIS.█

Hamilton County Municipal Court.

No. C96–TRC–00012A–D.

Decided June 17, 1996.

*Pamela J. Sears,* Assistant City Prosecutor, for plaintiff.

*James M. Looker,* for defendant.

---

DAVID C. STOCKDALE, Judge.

This matter is before the court on the defendant Richard L. Norris's motion to suppress the evidence garnered by the police as a result of his arrest.

The facts presented at the hearing on the defendant's motion are that on December 27, 1995, Ms. Sharon Jones and her daughter, Ms. Kelsey Blanks, were in Jones's car waiting to exit the parking lot at the Ground Round Restaurant onto Springdale Road in Colerain Township, Hamilton County. Blanks was driving her mother's car. At that point, the defendant, an employee of the restaurant, drove into the parking lot from Springdale Road, striking the stationary Jones vehicle. The defendant continued on after the collision and parked his vehicle. He exited the vehicle and was entering the restaurant when Blanks called to him that he had struck their car. At the same time, Jones went into the restaurant to call the police. The defendant went over to the Jones car, where Blanks showed him the damage. Blanks testified that the defendant stumbled twice as he walked toward her and that, in the ensuing conversation, his speech was slurred. A short while later, Jones returned, and the defendant engaged her in conversation, proposing to pay for the damage without involving the police. His speech was slow and slurred. When Jones refused his offer, he stumbled toward and into the restaurant. He returned some time later and said to Jones and her daughter that his boss had told him to go home. He then got into his vehicle and drove away. Jones thereupon called the police again and

Corporal Finnen of the sheriff's department arrived shortly thereafter, at 4:56 p.m.

After Deputy Finnen interviewed Jones and her daughter, he spoke to the manager of the restaurant and learned the defendant's name and address. He then went to the defendant's home at 2512 Flanigan Court, Apartment 4, in Cincinnati. The defendant answered the door and admitted to Deputy Finnen that he was Richard Norris. Deputy Finnen advised Norris of his constitutional rights, and then questioned him regarding the collision. The defendant admitted his involvement in a "fender bender," and Deputy Finnen asked him to step into the common hallway so that he could conduct some psychomotor tests. The defendant obliged, and Deputy Finnen administered the horizontal gaze nystagmus test, but he was unable to administer any other tests because of the defendant's physical condition. The defendant was then placed under arrest and transported to the sheriff's patrol headquarters, where he was given a breath-alcohol test at 6:19 p.m. and questioned further.

■ There are two prongs to the defendant's motion. First, while conceding that Deputy Finnen had probable cause to arrest him, the defendant argues that his arrest violated his Fourth Amendment right against a warrantless arrest. It is undisputed that Deputy Finnen did not have an arrest or search warrant when he went to the defendant's apartment. The defendant's warrantless arrest on misdemeanors, the commission of which did not occur in the arresting officer's presence, clearly violates R.C. 2935.03. However, the evidence flowing from the arrest of the defendant in violation of R.C. 2935.03 is not subject to suppression unless the arrest also violated the defendant's constitutional rights. *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 18 O.O.3d 435, 416 N.E.2d 598; *State v. Allen* (1981), 2 Ohio App.3d 441, 2 OBR 536, 442 N.E.2d 784.

■ The defendant relies on *State v. Petrosky* (Mar. 27, 1991), Hamilton App. Nos. C–900264 and C–900265, unreported, 1991 WL 40550, for the proposition that this was a warrantless home arrest for a minor offense and, as such, was prohibited by the Fourth Amendment. The decision in *Petrosky* is based on *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639, which holds that the Fourth Amendment, as made applicable to the states by the Fourteenth Amendment, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home to arrest the suspect. The court's rationale for this holding is that it was the physical entry of the house that was the chief evil against which the wording of the Fourth Amendment was directed. The court stated that the Fourth Amendment has drawn a firm line at the entrance to a suspect's house and that absent exigent circumstances, that threshold may not be crossed without a warrant. See, also, *Elyria v. Tress*

(1991), 73 Ohio App.3d 5, 595 N.E.2d 1031; *Middleburg Hts. v. Theiss* (1985), 28 Ohio App.3d 1, 28 OBR 9, 501 N.E.2d 1226.

In this case, however, there was no entry into the defendant's home. Deputy Finnen remained in the hallway outside during his entire colloquy with the defendant. The defendant did not attempt to close the door or to retreat into his apartment, but voluntarily stepped into the common hallway when asked to do so by Deputy Finnen. Thus, while the defendant was arrested at his home, without a warrant, this was not an in-home arrest of the type prohibited by the Fourth Amendment.[1]

The second prong of the defendant's motion is that the results of the breath-alcohol test administered to the defendant are inadmissible because the state has not proven by a preponderance of the evidence that the test was administered within two hours of the offense. The court finds this argument to be well taken.

R.C. 4511.19(D) requires that the breath sample be collected within two hours of the alleged offense to be admissible at trial.[2] Deputy Finnen was dispatched to the scene of the accident by the 911 operator at 4:31 p.m. The breath-alcohol test was not administered until 6:19 p.m., which is one hour and forty-eight minutes later. Logically, the collision had to have occurred prior to 4:31 p.m. and the state bears the burden of proving by a preponderance of the evidence that the crash occurred within the twelve minutes prior to Deputy Finnen's 4:31 p.m.

---

1. The facts of this arrest are somewhat similar to those in *Petrosky, supra*. In *Petrosky*, the police went to the defendant's residence after discovering his car disabled and abandoned alongside the road, the car having apparently struck a guardrail and embankment. The police officer confronted the defendant at the door of the defendant's house and demanded that he accompany him back to the scene of the accident. The defendant protested that he wanted to talk with his attorney first, but relented after the officer insisted that he leave immediately and threatened that there would be trouble if he did not go. Petrosky was questioned at the scene without being advised of his constitutional rights, then was formally arrested and charged with driving under the influence.

   Petrosky's motion to suppress the evidence flowing from his arrest was denied, whereupon he was tried and convicted. On appeal, the court held that the defendant's arrest was a warrantless home arrest, that there were no exigent circumstances to justify it, and that the evidence should have been suppressed. Nevertheless, the court of appeals affirmed the trial court's judgment because the defendant failed to demonstrate in the record that any of the evidence that ought to have been suppressed was used at the trial to convict the defendant. It is difficult to square the finding of a warrantless home arrest in *Petrosky* with *Payton, supra*, and its progeny given that there is no indication in the opinion that the arresting officer actually entered the defendant's house to effect the arrest. However, given the court's own characterization of the defendant's assignments of error as "merely theoretical propositions," we consider the court's decision on this point to be neither controlling nor persuasive.

2. The actions of the defendant that are alleged to constitute the offense occurred at the time of the collision and not at a later time, such as when he drove away from the scene of the collision.

dispatch (*i.e.,* at or before 4:19 p.m.) in order to bring the test within the two-hour time frame. The state has not met that burden.

Both of the witnesses in the other car testified that the deputy arrived twenty to twenty-five minutes after the accident. The testimony could not be correct, however, because Deputy Finnen testified that he arrived at 4:56 p.m., which would put the accident at between 4:31 p.m. and 4:36 p.m. Moreover, Blanks testified that Jones was in the restaurant for five to ten minutes after the collision making the call to the police. If she was in the restaurant for ten minutes and exited as soon as she completed her call, and Deputy Finnen was dispatched as soon as the call was completed, which was at 4:31 p.m., that indicates that the crash took place some time before 4:21 p.m., which is one hour and fifty-eight minutes before the test. We do not have the 911 tape to show when Jones's call was received and what time, if any, elapsed between her call and the dispatching of Deputy Finnen.

At another point, Blanks testified that, after returning from calling the police, Jones had a conversation with the defendant about the damage to her car and, at the conclusion of the discussion, the length of which was not stated, the defendant went into the restaurant, emerged twenty minutes later, spoke to the witnesses again, and then drove away. At least twenty-five to thirty minutes elapsed here from the instant of the collision to the time Jones called 911 again from the restaurant to report the defendant's departure from the scene. Jones testified that Deputy Finnen arrived within ten minutes after the second call. The elapsed time that is accounted for is thirty-five to forty minutes from the collision to Deputy Finnen's arrival. That puts the collision at between 4:16 p.m. and 4:21 p.m., a window which is at least partly outside the two-hour limit. Adding the unaccounted-for time may put the entire window beyond the two-hour limit. It would be pure guessing to say that the test was administered within two hours of the collision.

For the foregoing reasons, the defendant's motion is granted to the extent that the results of the breath-alcohol test are suppressed. The remainder of the motion to suppress is denied.

*Judgment accordingly.*